UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Criminal No. 22-CR-206 (RBW) |
| | ) |
| ALONZO STALLANS, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing in the above-referenced case.

On June 28, 2022, the defendant, Alonzo Stallans, pled guilty to one count of Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The Federal Sentencing Guidelines call for a sentence of 46-57 months of incarceration. Given the defendant's diagnosis of ▮▮▮▮▮▮▮▮▮▮ as outlined in both the Presentence Report and the forensic mental health examination, the government recommends a low-end sentence of **46 months of incarceration, followed by 10 years of supervised release**. This sentence takes into consideration the defendant's disability, while ensuring that the community remains protected by the imposition of a subsequent significant period of supervision.

## FACTUAL AND PROCEDURAL BACKGROUND

As described in the Presentence Report, on April 22, 2021, the defendant messaged a 15-year-old Canadian girl over Instagram. The defendant asked the minor victim if she wanted a boyfriend, and he told her that he was a 17-year-old boy who lived in Canada. The minor victim

informed the defendant that she was 15 years old, and she agreed to be his girlfriend. The defendant asked to video chat, and he sent the minor victim a video of himself masturbating. The minor victim told the defendant that she did not like the video because she "was not ready to go that far." Nevertheless, the defendant repeatedly attempted to send her additional photos of his penis. The minor victim informed her guardian, who reported the exchange to law enforcement.

Law enforcement identified the defendant as the Instagram user who communicated with the Canadian minor female. In addition, information from the National Center for Missing and Exploited Children (NCMEC) indicated that the defendant distributed images of child pornography via Facebook on December 15, 2020. Information received from Facebook, pursuant to a search warrant, revealed that the defendant had sent an image to one of the recipients identified in the NCMEC report on December 15, 2020, to which the recipient replied, "I can show this to the cops and you can go to jail" and "She is a little kid."

On March 10, 2022, law enforcement executed a search warrant at the defendant's residence in Washington, D.C. During the search, law enforcement seized the defendant's iPhone. Law enforcement was able to access the defendant's Telegram account from the iPhone. The defendant was a member of Telegram groups named '13+' and 'Young Girl Videos,' both of which had been removed by Telegram for violating the terms of service. He was also a member of another active group which contained videos of child pornography. The defendant's Telegram account also revealed a chat that the defendant had with another Telegram user in January 2022. The chat topic was 'Price List,' and it included a list of various packages of images depicting the sexual abuse of children for sale. A few of the package names were:

Kinder pack (6-14y.o.) 25$ [130gb]
6-14 for kids lovers

>School pack (14-19y.o.) 25$ [150gb]
>14-19 videos from hangouts, school toilets, teens at home
>
>Pack of ages (6—19y.o.) 50$ [400gb]
>Benefit of 10$ you get 2 tariffs in one for 40$
>
>Girl's rapes (popular) 55$ [215gb]
>Real rape, Party Videos, Darknet, Homemade (for lovers of hard rape)

As detailed below, the defendant requested child pornography from the individual who was selling the child sexual abuse material:

**Stallans**: I want to see a sample.
I got cash app $10 for 6-year-old girl.
Please show sample free of charge.
I'm hit y
I'm horny

**Seller**: I don't have cash app

**Stallans**: Ok I can do Paypal can u send free sample

The seller then sent the defendant a video depicting two prepubescent females. During the video, these prepubescent females are shown using their mouths to touch each other's vagina and anus.

During the forensic review of the defendant's iPhone, law enforcement discovered over 40 images depicting child pornography, including images of a prepubescent minor using her fingers to spread her vagina open, and a minor female bent over in such a way that her genital and pubic area is visible to the camera. The way that the minor is posed, and the way that the camera is focused, her vaginal area appears to be the focus of the image.

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the

Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

## II. Sentencing Recommendation

The government recommends a sentence of **46 months of incarceration, to be followed by ten years of supervised release**. This sentence takes into account the severity of the defendant's conduct, as well as the mitigating circumstances of his ▮▮▮▮▮▮▮▮▮▮▮. It also ensures that he will be monitored for a significant period of time, and thus protects the community from further harm.

### A. Nature and Circumstances of the Offense

The defendant's conduct is extremely serious. His offenses have been perpetrated against the most vulnerable members of our society – children. The children captured in the images and videos sought, possessed, and shared by the defendant were traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the defendant, views or shares the images for his own sexual gratification. The defendant's statements in the Telegram chat requesting child pornography of a 6-year-old girl because he was "horny" are particularly appalling, both for the young age of the child that he sought, as well as his blatant willingness to use the sexual abuse of a child to satisfy his sexual urges.

Each of the images that the defendant viewed and downloaded represents an innocent child victim who had the worst moments of his or her life forever memorialized and spread to countless offenders all over the world through the Internet. *See United States v. Blinkinsop*, 606 F.3d 1110, 1118 (9th Cir. 2010) (finding that "[t]he children involved in pictorial and cinematic pornography additionally endure ongoing harm because their images have been preserved in a permanent medium"). In *New York v. Ferber*, the U.S. Supreme Court stated:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 747, 759 n.10 (1982), *quoting* Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

The conduct that brings the defendant before the Court was not a one-time occurrence, nor a mistake. The defendant shared, received, and possessed child pornography, on multiple platforms, for over a year. Given the serious nature of the defendant's criminal conduct, a Guidelines sentence is appropriate.

### B. History and Characteristics of the Defendant

The defendant does not have a criminal history. However, his lack of a prior record does not correspond to an absence of criminal behavior. The defendant lied about his age to entice a 15-year-old girl into an online relationship with him, sent her a video of himself masturbating, and then repeatedly insisted on sending additional photos and videos of his penis despite being specifically told that she did not want to receive them. His purposeful misrepresentation about his age to the minor female – and his disregard when she told him to stop sending her photos – are extremely concerning.

Despite this conduct, however, the defendant's history and characteristics also present significant mitigation. Namely, both the Presentence Report and the forensic evaluation confirm that the defendant has a diagnosis of ███████████████, and that this disability affects his judgement and his capacity for complex thinking. *See* PSR ¶¶ 52, 54. Given the defendant's diagnosed ███████████████ and its effect on his behavior, the government believes that a sentence at the low end of the Guidelines is appropriate in this case. The period of incarceration should nevertheless be followed by a lengthy term of supervised release, to ensure that the defendant remains compliant with his treatment and does not recidivate.

### C. Seriousness of the Offense, Promotion of Respect for the Law, and Just Punishment for the Offense

Child pornography offenses are extremely serious because they result in perpetual harm to the most vulnerable victims, while simultaneously validating and normalizing the sexual exploitation of children. Courts across the country have recognized this:

> There can be no keener revelation of a society's soul than the way in which it treats its children. Given the current statistics surrounding child pornography, we are living in a country that is losing its soul.
>
> Child pornography is a vile, heinous crime. Mention the term to your average American and he responds with immediate disgust and a sense of unease. However, once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of the defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012).[1]

When enacting mandatory minimum penalties for those who produce and traffic in the sexual abuse and exploitation of children, Congress similarly described the evil of child pornography:

> [W]here children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . [The] existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children . . . it inflames the desires of . . . pedophiles . . . who prey on children, thereby increasing the creation of and distribution of child pornography and the

---

[1] *See also In re Amy Unknown*, 636 F.3d 190, 201 n.12 (5th Cir. 2011) (*citing United States v. Norris*, 159 F.3d 926 (5th Cir. 1998) (describing how the distribution of child pornography creates a marketplace for images of children, perpetuating abuse); *United States v. Yuknavich*, 419 F.3d 1302, 1310 (11th Cir. 2005); *United States v. Grosenheider*, 200 F.3d 321, 332-34 (5th Cir. 2000).

> sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials.

Child Pornography Prevention Act of 1996, Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-27 (1996).

There is perhaps no greater invasion of privacy than that caused by the dissemination of child pornography. With a click of the button on a camera, the sexual abuse of these children is memorialized forever. It is terrible enough that a child must live with the memory of his or her initial abuse. It is hard to even comprehend how that child could then learn to cope with the fact that strangers everywhere are using the worst moments of that child's life to sexually gratify themselves and that he or she can do nothing to stop them from continuing to do so. The only recourse that these children have is the strong enforcement of the laws that hold these offenders accountable for the tremendous damage they have inflicted upon countless child victims.

Consumers of child pornography, like the defendant, create a market and demand for materials depicting the sexual abuse and exploitation of real children. They contribute to the cycle of abuse and are in part responsible for the harm suffered by the children used to produce the materials in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007). In other words, even if consumers of child pornography do not themselves molest children, their actions directly contribute to the abuse of children.

Here, the defendant made the conscious decision to view, download, and share videos of children being exploited and raped – and he did so on multiple occasions. Incarceration is necessary to promote respect for the law, ensure just punishment, and to reflect the seriousness of the defendant's offenses.

### D. Adequate Deterrence and Protection of the Public

The possession, receipt, and distribution of child pornography endangers the public by encouraging the rape, violence, and abuse of children. In *United States v. Miller*, the Fifth Circuit stated:

> [R]eal children are being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by [defendant] and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today.

665 F.3d 114, 123 (5th Cir. 2011). The importance of deterrence with respect to child pornography offenses is well-established. Serious penalties for child pornography offenders decrease the number of participants in the market, which in turn decreases the need for its production:

> The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

9

*Goldberg*, 491 F.3d at 672; *see also Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

Here, the defendant's sentence should be sufficient to deter not only the defendant from reoffending in the future, but also to deter the criminal conduct of others who engage in, or contemplate engaging in, the trafficking of child sexual abuse material. As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for trafficking in child pornography, the greater the customer demand for it and so the more will be produced." 491 F.3d at 672. *See also Goff*, 501 F.3d at 261 (stating in a child pornography possession case that "deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"). The government's recommended sentence of 46 months' incarceration, which is within the sentencing guidelines, adequately serves this purpose. Moreover, the imposition of a lengthy period of supervised release – ten years – ensures that the defendant will continue to be monitored for a substantial period following his release, which serves to protect the public from future harm.

### E. Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ]defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the government's recommended sentence is within the Sentencing Guidelines range; per the plea agreement, both parties have agreed that this range is reasonable. *See* Plea Agreement, ¶ 5. The low-end sentence recommended by the government takes into account the defendant's ▓▓▓▓▓▓▓▓▓▓ as noted *supra*. Accordingly, there is no unwarranted disparity presented by the government's recommendation.

### F. The Victims Are Entitled to Restitution

In child pornography cases, restitution is mandatory to any person "harmed as a result of" a defendant's crime. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;

(B) Physical and occupational therapy or rehabilitation;

(C) Necessary transportation, temporary housing, and child care expenses;

(D) Lost income;

(E) Attorneys' fees, as well as other costs incurred; and

(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

Possession of Child Pornography is a child pornography trafficking offense, as defined in 18 U.S.C. § 2259(c)(3). Therefore, the Court shall determine the full amount of the victim's losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is not less than $3,000. 18 U.S.C. § 2259(b)(2). Here the government has identified two victims who are entitled to restitution: the victim from the 'Lighthouse1' Series and the victim from the 'Jenny' Series. The Government has attached a proposed Restitution Order to this Memorandum as Exhibit A, reflecting the amounts of restitution requested by the attorneys for those victims.

In *Paroline v. United States*, 134 S. Ct. 1740 (2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps.

First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722.

Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id.* at 1726-27. The Court recognized that in most child pornography possession cases, a victim's losses resulted from harm caused by the trafficking of his or her images by numerous

"geographically and temporally distant offenders acting independently, and with whom the defendant had no contact." *Id.* at 1727. As a result, the Court held that:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1725. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id.* That is, in part, because a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id.*

Third, the Court provided sentencing courts with the guidance regarding how to determine the proper amount of restitution under this standard. The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id*. at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the

13

defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*.

Congress has since amended Section 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (2018). As detailed in the victim impact statements and requests for restitution that were filed under seal with the Court, some of the victims depicted in the images and videos that the defendant sought out, downloaded, viewed, and shared, are seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income, and for various medical expenses incurred as a result of the defendant's actions. Thus, for the reasons set forth above, the government respectfully requests that the Court shape an appropriate restitution award, in amounts consistent with those in the Proposed Restitution Order attached as Exhibit A, to be paid by the defendant.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the defendant be sentenced to a term of incarceration of 46 months, followed by ten years of supervised release. Such a sentence contemplates not only the relevant guidelines range set forth for this offense, but also adequately reflects the factors as outlined in 18 U.S.C. Section 3553(a).

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

*/s/ Caroline Burrell*
Caroline Burrell
CA Bar No. 283687
Assistant United States Attorney
601 D. St N.W.
Washington, D.C. 20530
(202) 252-6950
caroline.burrell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the government's opposition was duly served upon the defense counsel by electronic means via the Court's ECF system.

This 23rd day of September, 2022.

*/s/ Caroline Burrell*
AUSA Caroline Burrell

# EXHIBIT A
# PROPOSED RESTITUTION ORDER

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 22-CR-206 (RBW)** |
| ) | |
| **ALONZO STALLANS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

Upon consideration of the United States' Sentencing Memorandum and Exhibits, IT IS HEREBY ORDERED that the Government's Motion is GRANTED; and:

For the reasons stated on the record at sentencing on September 28, 2022, and as the record herein fully supports, based on the defendant's financial resources and ability to pay, IT IS HEREBY ORDERED that the defendant, Alonzo Stallans, shall pay restitution, pursuant to 18 U.S.C. §§ 2259, 3663, 3663A, and 3664, for the benefit of the victims, in the amounts and to their Attorneys of Record, as detailedbelow. The total amount of restitution owed by the Defendant is $13,000.

1) $3,000 to the victim depicted in the "Jenny" Series payable to:

Marsh Law Firm PLLC
Attn: Jenny
PO Box 4668 #65135
New York, NY 10163

*Payments should be made payable to "Marsh Law Firm PLLC in trust for Jenny"

2) $10,000 to the victim depicted in the "Lighthouse 1" Series payable to:

>Deborah A. Bianco, in trust for Maureen
>PO Box 6503
>Bellevue, WA 98008

IT IS FURTHER ORDERED, that the following shall be ordered and the corresponding language incorporated into the Judgment and Commitment order:

> The full sum or amount of ordered restitution is due immediately. This restitution order constitutes an enforceable judgment, consistent with the terms of the Plea Agreement between the United States and the Defendant and pursuant to 18 U.S.C. § 2259, 18 U.S.C. § 3613 (a), (c) and (f) and § 3664 (m)(1)(A). Any payments must be made to the parties at the addresses detailed above. Any schedule of payments imposed by the Court is merely a minimum schedule of payments and will not be the only method, nor a limitation on the methods, available to the United States to enforce the criminal judgment, including without limitation by administrative offset. Consistent with 18 U.S.C. § 3664 (n), "if the [Defendant] receives substantial resources from any source…during a period of incarceration, he will be required to apply the value of such resources to any restitution still owed." If any amount of restitution remains outstanding, the Court imposes a payment schedule of at least the following amounts:
>
>> **Imprisonment**. During any period of incarceration in a prison in the United States, payment of any criminal monetary debt (special assessments and restitution) remains due, and the Defendant shall pay, at a minimum, the greater of $25 or 50% of the deposits in his inmate trust account per quarter."
>
>> **After Imprisonment**. Any portion of the criminal monetary debt that remains unpaid at the time of the defendant's release from imprisonment shall be paid at a monthly rate determined by the Court based upon his financial ability to pay.

IT IS FURTHER ORDERED, that once paid, the Clerk's Office shall disburse monies received in satisfaction of restitution to the victims as listed and detailed above.

IT IS FURTHER ORDERED, that consistent with the terms of the Plea Agreement, which was accepted by the Court, the restitution amount of $13,000, with the above-described provisions, is hereby incorporated into the Judgement and Commitment Order for this matter.

SO ORDERED, this _____ day of September 2022

_____
THE HONORABLE JUDGE REGGIE B. WALTON
UNITED STATES DISTRICT COURT JUDGE